IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

**v.**

JAIME BAUZO-SANTIAGO,

**Defendant.**

**Criminal No.** 12-602 (FAB)

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court are defendant Jaime Bauzo-Santiago's motion to dismiss the indictment with prejudice (Docket No. 166), the government's opposition (Docket No. 172), the defendant's reply (Docket No. 178), and the government's sur-reply (Docket No. 180). For the reasons expressed below, defendant Bauzo's motion to dismiss is **DENIED**.

**I.   BACKGROUND**

On September 29, 2014, defendant Bauzo filed an *ex parte* motion to appoint an expert investigator. (Docket No. 120.)  The Court granted the defendant's motion in an *ex parte* order on September 30, 2014.  (Docket No. 127.)  On October 1, 2014, defendant Bauzo filed a notice informing the Court and the government that the defendant could call expert Evaristo Alvarez Ghigliotti to testify that the signature purported to be the defendant's on the waiver of rights executed by Puerto Rico Police Officer Eduardo Santos Davila is not the defendant's signature.

(Docket No. 138.)  Because defendant Bauzo's notice was filed late, the Court denied the use of this expert.  (Docket No. 140.)  On October 2, 2014, defendant Bauzo filed an *ex parte* motion for reconsideration of the order denying the use of expert Alvarez. (Docket No. 145.)  On October 6, 2014, before the Court ruled on the motion for reconsideration, defendant Bauzo filed – without restrictions – expert Alvarez's report.  (Docket No. 160-1.)  On that same day, the Court issued a memorandum and order denying defendant Bauzo's motion for reconsideration, thereby sustaining the denial of his use of expert Alvarez.  (Docket No. 161.) Because defendant Bauzo filed the expert report without restrictions, the Court also ordered the restrictions on Docket Nos. 120, 127, and 145 to be removed.  (Docket No. 163.)  On October 7, 2014, defendant Bauzo filed a motion to dismiss the indictment with prejudice, claiming that the Court's removal of the restrictions from Docket Nos. 120, 127, and 145 denied the defendant his right to not disclose his defense and strategy to the government.  (Docket No. 166.)  The government opposed the motion to dismiss on October 8, 2014 (Docket No. 172.)  On October 9, 2014, the defendant replied, (Docket No. 178), and the government filed a sur-reply, (Docket No. 180.)

## II. ANALYSIS

### A. *Ex Parte* Applications Pursuant to 18 U.S.C. § 3006A(e)(1)

Section 3006A(e)(1) of Title 18 of the United States Code provides as follows:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application.  Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1).  The purpose of handling section 3006A(e)(1) applications *ex parte* is to "prevent[] the possibility that an open hearing may cause a defendant to reveal his defense." United States v. Abreu, 202 F.3d 386, 390 (1st Cir. 2000) (citing H.R. Rep. No. 88-864 (1963), reprinted in 1964 U.S.C.C.A.N. 2990, 2990).

Defendant Bauzo relies on four cases, Abreu, Correa-Alicea, Sutton, and Marshall, to support his arguments that the Court's removal of the restrictions from Docket Nos. 120, 127, and 145 denied him his right to have section 3006A(e)(1) matters conducted *ex parte* and that the only remedy is dismissal of the indictment with prejudice.  (Docket Nos. 166, 178.)

In Abreu, 202 F.3d at 388, the defendant filed an *ex parte* request seeking expert funding for a psychological evaluation prior to sentencing.  The district court held a hearing on the

matter, at which time "defense counsel declined to place on the record certain confidential matters that formed part of the basis for the application" because the government was present.  Id.  The district court denied the request for expert services.  Id.  The First Circuit Court of Appeals held that the district court erred "in not handling the entire application on an ex parte basis" and remanded for the district court to "hear ex parte . . . new matters that counsel . . . refrained from presenting before on grounds of privilege or confidentiality."  Id. at 391.

        In United States v. Correa-Alicea, 585 F.3d 484, 491 (1st Cir. 2009), the defendant filed an *ex parte* motion requesting funds for a voice identification expert.  The district court denied the request, but in so doing, disclosed to the government that the request was for funds to retain a voice identification expert.  Id. at 493.  The government conceded that the Court's disclosure was an error, and the First Circuit Court of Appeals agreed.  Id.  The First Circuit Court of Appeals nonetheless held that the error was harmless because voice identification was not pivotal to the defendant's defense and because the government presented overwhelming evidence of the defendant's guilt.  Id.

        In United States v. Sutton, 464 F.2d 552, 553 (5th Cir. 1972), the district court held a hearing on the defendant's request for funding for investigative services.  Id.  The government's presence at the hearing caused defense counsel to "decline to

reveal . . . the names of witnesses and the nature of the information which would be the object of th[e] investigation" so as to not disclose the defense.  Id.  The Fifth Circuit Court of Appeals held that the district court's denial of the request for an investigator based on an inadequate showing of necessity was improper and warranted reversal.  Id.

In Marshall v. United States, 423 F.2d 1315, 1317 (10th Cir. 1970), the defendant requested funding for investigative services to locate and interview two potential witnesses.  The district court held a hearing on the matter, at which the defendant testified under oath to establish the basis for the services sought.  Id.  The government cross-examined the defendant extensively at the hearing and used this testimony to impeach the defendant when he testified at trial.  Id.  The government also used new information that it acquired at the hearing to call a rebuttal witness at trial whose "testimony bolstered the prosecution."  Id. at 1319.  The Tenth Circuit Court of Appeals reversed the defendant's conviction, holding that "section 3006A(e) can[not] be used directly in an adversary proceeding . . . as a means of frustrating the fifth amendment right prohibiting self-incrimination."  Id.

**B.   Removal of the Restrictions from Docket Nos. 120 and 127**

In his *ex parte* application for the services of an investigator filed on September 29, 2014, defendant Bauzo revealed the following:

> 2.   This case was investigated by the Federal Public Defender's team of investigators.
>
> 3.   As part of the investigation, **several witnesses** to the events of the night when the defendant was arrested were named.  Those witnesses were not called to testify during the suppression hearing held before the Magistrate Judge, nor [*sic*] during the de novo hearing held by District Judge Cerezo.
>
> 4.   Since Mr. Bauzo will proceed to exercise his right to go to trial[,] counsel's professional responsibility requires that she interviews [*sic*] **these witnesses** through the aide [*sic*] of an investigator.

(Docket No. 120 (emphasis added).)  In this application, defendant Bauzo did not name the witnesses to be interviewed nor did he reveal the nature of the information sought.  <u>Id.</u>  The Court's subsequent *ex parte* order granting the use of the investigator provided no details whatsoever regarding the names of potential witnesses or the nature of the information sought.  (Docket No. 127.)

The fact that several witnesses were present in the area where defendant Bauzo was arrested was first revealed by the government witness at the suppression hearing held on March 7, 2013.  (Docket No. 56 at p. 19.)  The fact was also mentioned subsequently by the defense witness at the same suppression

hearing, id. at p. 51, and by both the government witness and the defense witness at the *de novo* hearing held on December 11, 2013, (Docket No. 87 at pp. 21-22, 29-30, 48, 61). Thus, disclosure of this fact when the Court removed the restriction from Docket No. 120 on October 6, 2014, did not provide the government with any new information. Further, the likelihood that a defendant may introduce witnesses in his favor at trial is present in all cases, and particularly here, where a defense witness testified at a suppression hearing and at a *de novo* hearing.

This case is thus easily distinguished from Marshall, 423 F.2d 1315, where the Tenth Circuit Court of Appeals reversed the defendant's conviction because: (1) the government participated in the hearing that was held to determine whether the defendant's section 3006A request for an investigator should be granted; (2) the government cross-examined the defendant at the hearing and used his testimony to impeach the defendant at trial; and (3) the government used new information learned at the hearing to bolster its case. Here, the Court granted defendant Bauzo's request to use the investigator before it removed the restriction from the defendant's application; the government in no way participated in the Court's *ex parte* decision; and disclosure of the application and order revealed no new information to the government.

This case is also easily distinguished from Abreu, 202 F.3d 386, and Sutton, 464 F.2d 552, where the district courts

denied the defendants' applications for expert funding after defense counsels were compelled to withhold probative information at the hearings due to the government's presence. Here, the Court granted defendant Bauzo's application for funding of an expert *ex parte* without holding a hearing and without the government's participation. (Docket No. 127.) It was not until seven days after granting the application that the Court removed the restrictions from the application and the order. (Docket No. 163.)

The Court thus concludes that removal of the restrictions from Docket Nos. 120 and 127 did not reveal defendant Bauzo's strategy or defense, nor did it prejudice him in any way. Dismissal of the indictment with prejudice is therefore not warranted.

### C.   Removal of the Restriction from Docket No. 145

In his *ex parte* motion for reconsideration of the order denying the use of the handwriting expert, filed on October 2, 2014, defendant Bauzo revealed the following:

> The issue the expert will testify about will cause the matter of the suppression of the statements and the weapon to be reopened and reconsidered by the court, that has at its disposal the transcripts of two hearings where the Police Officer testified. The issue is essential to defendant's defense, not only for the issue of suppression but also for the matter of credibility of the police officer witness. In essence, the police officer has testified Mr. Bauzó signed a waiver of rights that he witnessed. The waiver of rights has been introduced into evidence in both hearings and has been designated as part of the government's evidence for their case in chief. When the expert compared the waiver of rights with other documents signed by the defendant and with documents

written by the police officer, the expert concluded that
there are no sufficient similarities between the
signature of the defendant in the documents <u>and</u> that
there are similarities between the hand writing [*sic*] of
the police officer and the purported signature on the
waiver of rights.

(Docket No. 145 (emphasis in original).)

        Prior to filing this *ex parte* motion for reconsideration,

<u>id.</u>, defendant Bauzo filed a notice on October 1, 2014, disclosing

the following to the Court and to the government:

        2.   Evaristo Alvarez Ghigliotti, Forensic Document
        Examiner[,] may be called to testify by the defense.  CV
        attached as exhibit A.

        3.   Mr. Alvarez Ghigliotti may testify regarding
        defendant's purported signature on the Waiver of Rights
        executed by Puerto Rico Police Officer Santos as compared
        to other documents that also bare [*sic*] a signature
        proposed to be the defendant's. His opinion will be that
        the signature on the Waiver of Rights executed by Puerto
        Rico Police Officer Santos Davila is not the defendant's
        signature.

(Docket No. 138.)

        Additionally, before the Court removed the restriction

from defendant Bauzo's *ex parte* motion for reconsideration, (Docket

No. 145), defendant Bauzo filed Evaristo Alvarez Ghigliotti's

expert report, disclosing the following to the Court and to the

government:

        It is my professional opinion that the person who wrote
        the information that included the handprinted name of
        Jaime Bauzo Santiago and or Jaime Bauzo in the police
        forms identified in *items B, C and D*, is probably the
        same person who handprinted the name of Jaime Bauzo
        Santiago (suspect) in *item A*.

(Docket No. 160-1 at p. 3.)

Thus, this case is distinguished from <u>Correa-Alicea</u>, 585 F.3d 484, where the defendant filed an *ex parte* motion requesting funds for a voice identification expert and the district court erred in disclosing to the government that the request was for a voice identification expert.  Here, defendant Bauzo did not file his notice to use a handwriting expert *ex parte*.  (Docket No. 138.) Thus, it was defendant Bauzo himself, and not the Court, who first disclosed to the government in Docket No. 138 his intention to attack officer Santos's credibility by comparing defendant Bauzo's signature on the waiver of rights with other documents containing defendant Bauzo's signature.  Defendant Bauzo then disclosed to the government in Docket No. 160-1 his intention to attack officer Santos's credibility by comparing defendant Bauzo's signature on the waiver of rights with officer Santos's handwriting.  Both of these disclosures occurred before the Court removed the restriction from Docket No. 145.  (Docket No. 163.)  Docket No. 145 does not reveal any additional defense strategy that was not disclosed by defendant Bauzo himself in Docket Nos. 138 and 160-1.

Accordingly, the Court concludes that removal of the restriction from Docket No. 145 did not prejudice defendant Bauzo in any way.  Dismissal of the indictment with prejudice is therefore not warranted.

## III. CONCLUSION

For the reasons explained above, the Court **DENIES** defendant Bauzo's motion to dismiss the indictment with prejudice.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 10, 2014.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE