**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

              **v.**                    **Criminal No.** 12-602 (FAB)

JAIME BAUZO-SANTIAGO,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court are defendant Jaime Bauzo-Santiago's motions for a judgment of acquittal, (Docket No. 224), and for a new trial, (Docket No. 225).  For the reasons that follow, the defendant's motions are both **DENIED**.

**BACKGROUND**

    As is standard protocol, the Court summarizes the key facts in a light most compatible with the jury's verdict and in a manner consistent with the trial record.  See United States v. Valerio, 676 F.3d 237, 240 (1st Cir. 2012); United States v. Polanco, 634 F.3d 39, 40 (1st Cir. 2011).

***The Arrest***

    On the night of July 24, 2012, Agent Eduardo Santos-Davila ("Agent Santos"), a member of the Puerto Rico Police Department's Control and Prevention Unit (the "Preventive Unit"), was one of several officers tasked with patrolling the municipality of

Carolina. (Docket No. 220 at pp. 66-69.) As part of his patrolling duties for the Preventive Unit, Agent Santos tended to survey areas within the northern part of Carolina, including the "La Ceramica" development, and he did so on that night, joined by three other patrol cars. Id.

While driving a marked police vehicle on Caoba Street in La Ceramica, Agent Santos saw a man later identified to be the defendant, Jaime Bauzo-Santiago ("Bauzo"), standing outside of a black Mercedes-Benz SUV. (Docket No. 220 at pp. 72-73.)[1] Caoba Street runs two ways, and the SUV was parked on the side opposite Agent Santos, with its front facing him. Id. As he advanced slowly toward the SUV, Agent Santos observed Bauzo remove a pistol from his waistband and throw it in the SUV before walking to a nearby house. Id. At that point, Agent Santos exited his patrol car and approached Bauzo to ask whether he had a license to carry firearms. Id. at pp. 74-75. When Bauzo answered that he did not, Agent Santos requested that Bauzo accompany him to the SUV. Id. Agent Santos then opened the closed, but unlocked door of the SUV and saw the pistol on the car's driver-side floor. Id. at pp. 75-76. Agent Santos seized the pistol and arrested Bauzo. Id. at p. 76. Some of Agent Santos's fellow officers, who had arrived during

---

[1] Though the events at hand occurred in the final hours of the day, as late as 11 p.m., illumination from his patrol car's headlights and a nearby streetlight aided Agent Santos's visibility. (Docket No. 220 at p. 75.)

the intervention, and a few bystanders observed these events.  Id. at pp. 79-80.

At the police station, after being advised of his constitutional rights, Bauzo told Agent Santos that he possessed the firearm for his safety because he sold jewelry and clothing. (Docket No. 220 at pp. 84-85.)  Indeed, a vehicle inventory later revealed jewelry and clothing items inside of the SUV.  Id.

**The Pre-Trial Proceedings**[2]

On August 2, 2012, a grand jury indicted Bauzo, charging him with violating 18 U.S.C. § 922(g)(1), a statute that makes criminal a convicted felon's possession of a firearm.  (Docket No. 9.)[3] Magistrate Judge Carreño-Coll appointed the Federal Public Defender to represent Bauzo.  (Docket No. 5.)  Initially, Carlos A. Vazquez-Alvarez ("AFPD Vazquez") appeared on Bauzo's behalf.  (Docket No. 8.)  Later, Thomas Trebilcock-Horan ("AFPD Trebilcock") joined the defense team.  (Docket No. 26.)

Pleading not guilty, Bauzo filed a motion to suppress the evidence procured from the search of his vehicle as well as the statements he made to law enforcement officials subsequent to the search.  (Docket No. 27.)  Bauzo contested the constitutionality of

---

[2]  As an initial point of clarification, Bauzo's case was originally assigned to Judge Carmen Cerezo.  On September 24, 2014, the case was transferred to this Court's docket.  (Docket No. 113.)

[3]  The statute prohibits, in pertinent part, "any person who has been convicted in any court" of "a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).

the warrantless search, averring that Agent Santos lacked probable
cause and that no recognized exception otherwise excused the
officer's noncompliance with the Fourth Amendment's warrant
requirement.  Id. at p. 2.  To that end, Bauzo urged the Court to
suppress "all evidence allegedly [obtained] from his vehicle" on
the night of his arrest, including his concomitant statements, as
"fruits of the illegal search."  Id. at pp. 2-3, 12.  The
government opposed, contending that Bauzo lacked standing to
challenge the search and that, in any event, the search was
constitutionally sound in light of either the plain view exception
or the inevitable discovery doctrine.  (Docket No. 32.)

On January 22, 2013, Judge Cerezo referred Bauzo's suppression
motion to a magistrate judge for a report and recommendation.
(Docket No. 35.)  On March 7, 2013, Magistrate Judge Velez-Rive
held an evidentiary hearing, during which each party presented
witnesses and exhibits.  See Docket Nos. 46, 47, 56.[4]  On March 20,
2013, Magistrate Judge Velez-Rive issued a report and
recommendation finding that Bauzo in fact had standing, resolving
based on conflicting witness testimony that probable cause to
search the Mercedes-Benz SUV was absent, and suggesting that the
pistol and Bauzo's post-arrest statements be suppressed.  (Docket

_____

[4] As to the issue of standing, Defendant Bauzo testified on his on
behalf.  See Docket No. 56 at pp. 4-13.  As to the warrantless search,
Agent Santos testified for the prosecution, see id. at pp. 13-41, while
Evelyn Judith Berrios-Romero, a witness who observed the events
surrounding Bauzo's arrest from her daughter's nearby home on Caoba
Street, testified for the defense, see id. at pp. 42-80.

No. 48 at pp. 3-8, 23, 27.)   Thereafter, the government twice
objected to the magistrate's report and on both occasions requested
a *de novo* hearing so that the district court could make its own
determination as to witness credibility.   (Docket Nos. 53, 65.)
Each time, Bauzo opposed.   (Docket Nos. 60, 68.)

On August 26, 2013, Judge Cerezo ordered a *de novo* evidentiary
hearing limited to the same witnesses, (Docket No. 70 at p. 6),
which was held on December 11, 2013, (Docket Nos. 74, 76).[5]   The
parties then submitted additional, post-hearing briefing for and
against suppression.   (Docket Nos. 77, 78.)

On January 16, 2014, Judge Cerezo issued an order rejecting
the magistrate judge's report and recommendation and denying
Bauzo's motion to suppress.   (Docket No. 81.)   Having listened to
live testimony of the same witnesses, Judge Cerezo assessed the
government witness to be more credible, a finding that necessarily
altered the probable cause calculus.   See id. at p. 5.   Ultimately,
both the pistol and Bauzo's post-search statements were introduced
at trial.   (Docket No. 220 at pp. 78-79, 84.)

_____

[5]   With respect to the issue of Bauzo's standing, Judge Cerezo concurred
with the magistrate's report and recommendation, laying to rest the
government's objections on the matter. (Docket No. 70 at pp. 4-5.) With
respect to the issue of probable cause, Judge Cerezo found the
determination to be "wholly dependent" on which version of the facts was
accepted as credible. Id. at p. 5. Although the magistrate judge deemed
more convincing the defense witness's account, Judge Cerezo hesitated to
accept this appraisal without the benefit of first-hand testimony,
particularly because the parties had painted vastly different pictures
of the pertinent events. See id.

On March 19, 2014, two days before trial was set to begin, Bauzo's attorneys, AFPDs Vazquez and Trebilcock, filed a sealed, *ex-parte* motion to withdraw as defense counsel.  (Docket No. 90.) Approximately two months later, on May 20, 2014,[6] with the defense attorneys' motion still pending, the clerk posted to the docket a handwritten letter in Spanish to the Court,[7] purportedly from the defendant,[8] as a *pro se* motion to appoint counsel.  (Docket No. 94 (the "May 20 Letter").)  As confirmed by a later-issued certified translation, the letter primarily conveyed the defendant's desire for new counsel, indicating a breakdown in his relationship with his court-appointed attorney.  <u>See</u> Docket No. 173-1 at p. 1 (lamenting that AFPD Vazquez "[did] not have interest in [Bauzo's] case," indicating a lack of "good communication" with AFPD Vazquez, and seeking to replace AFPD Vazquez).  The letter, however, also included an incriminating statement: "I, Jaime Bauzo Santiago, with number 40236-069, have always accepted my responsibility as to

---

[6]  The letter's envelope was postmarked March 12, 2014, (Docket No. 94-1), one week before AFPDs Vazquez and Trebilcock sought to withdraw as counsel, (Docket No. 90), but the letter was not stamped as "received and filed" until May 20, 2014, (Docket No. 94).  The source of this delay is unknown to the Court.

[7]  The letter was addressed to the Honorable Carmen Cerezo, (Docket No. 94), the judge previously assigned to Bauzo's case, <u>see</u> <u>supra</u> note 2.

[8]  In challenging the admissibility of the letter's contents, Bauzo left open whether he was its author.  <u>See, e.g.</u>, Docket No. 132 at ¶¶ 3, 6 (noting that the letter was "purportedly sent by the defendant" and challenging whether "it may be proven that the statement was made by the defendant").

guilt, the only thing that I ask of you is that the time for the weapons law crime be a reasonable one." <u>Id.</u>

On May 28, 2014, Judge Cerezo granted AFPDs Vazquez and Trebilcock's motion to withdraw as attorneys, terminating the defendant's *pro se* letter motion, and appointed new counsel for Bauzo. (Docket No. 95.) Laura Maldonado-Rodriguez entered an appearance, (Docket No. 96), and served as Bauzo's counsel thereafter. On September 24, 2014, the case was transferred to this Court's docket. (Docket No. 113.)

Although the issue of Bauzo's representation had been settled, the May 20 Letter lived to see another day. On September 29, 2014, in its second amended formal notice for designation of evidence, the government manifested its intent to use as evidence in its case in chief "[Bauzo's] incriminatory statement [from the May 20 Letter] filed on Docket Entry 94." (Docket No. 125 at ¶ 12.) The next day, Bauzo filed a motion *in limine* to preclude the government from introducing the incriminating statement at trial. (Docket No. 132.) Bauzo argued that the statement was inadmissible hearsay that lacked corroborating circumstances indicating its trustworthiness, <u>see</u> Fed. R. Evid. 804(b)(3)(B); that the statement was rendered in the course of plea negotiations and should be excluded, <u>see</u> Fed. R. Evid. 410; and that the statement's probative value was substantially outweighed by its danger of unfair

prejudice and confusing the jury, see Fed. R. Evid. 403. (Docket No. 132.)  The government opposed.  (Docket No. 153.)

On October 3, 2014, the Court denied Bauzo's motion *in limine*, permitting the incriminating statement's introduction at trial. (Docket No. 159.)  On October 8, 2014, the government filed a certified translation of the full text of the May 20 Letter, (Docket No. 173-1), as well as its proposed redactions, (Docket Nos. 173-2, 173-3).  As translated and redacted, the statement read: "I, Jaime Bauzo Santiago, with number 40236-069, have always accepted my responsibility as to guilt, [redacted] for the weapons law crime [redacted]."  (Docket No. 173-2.)[9]  At trial, the government would submit into evidence this redacted excerpt, both in English and in Spanish.  See Docket No. 209 at p. 1 ("Gov-3").

On the eve of trial, Bauzo objected to the government's proposed redactions to the May 20 Letter. (Docket No. 191.) Bauzo argued that the original statement in the letter contained two independent clauses: the first, regarding his acceptance of responsibility; the second, regarding "what he want[ed]."  Id. at ¶¶ 3-4.  The redaction, he argued, effectively merged elements of the two separate clauses into a single thought, thus deviating from the writer's original intent.  See id.  Because the Court did not issue a formal order as to this objection prior to trial, Bauzo

[9]  The redacted portions appear as blank spaces on the exhibit's final form.  See Docket No. 173-2.

reasserted his arguments before the Court at trial.  <u>See</u> Docket No. 220 at pp. 4-6.  In response, the government averred that the two clauses were properly combined as parts of the same sentence and that the redactions were necessary to eliminate information related to the sentencing phase.  <u>Id.</u> at pp. 6-7.  The Court agreed that references to sentencing should be kept from the jury and denied Bauzo's objection.  <u>Id.</u> at pp. 5, 7.

***The Trial***

At trial, the government introduced the incriminating statement from the May 20 Letter during its direct examination of Agent Jean Carlos Rivera ("Agent Rivera"), a member of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") who had worked on the Bauzo case.  (Docket No. 220 at pp. 50-51, 56-62.)  Bauzo objected as to authentication, pursuant to Federal Rules of Evidence 901 and 1007.  <u>Id.</u> at p. 52.[10]  The government responded that the letter was self-authenticating as a court document, pursuant to Federal Rule of Evidence 902, and that sufficient indicia of the letter's authorship - such as Bauzo's signature, inmate number, magistrate case number, and return address – permitted the Court to consider its contents to be a statement by the defendant, pursuant to Federal Rules of Evidence 901 and

---

[10] Bauzo attempted to raise the authentication issue at the outset of trial, but the Court instructed that he wait until the prosecution introduced the letter.  (Docket No. 220 at pp. 7-8.)  The government did not refer to the letter in its opening statement.

801(d)(2).  _Id._ at pp. 53-55.  The Court agreed with the government
and overruled Bauzo's objection.  _Id._ at pp. 55, 56.  Agent Rivera
then testified to receiving the letter from the clerk's office and
read the incriminating statement to the jury.  _Id._ at pp. 59-62.[11]

At the close of the government's case, Bauzo moved for a
judgment of acquittal pursuant to Federal Rule of Criminal
Procedure 29.  (Docket No. 222 at p. 26.)  In doing so, he asked
the Court to reconsider its decisions with respect to suppression,
_see_ Docket No. 81 (denying Docket No. 27), and admissibility of the
incriminating statement, _see_ Docket No. 159 (denying Docket No.
132), despite the Court's suggestion that such arguments went
beyond the bounds of his Rule 29 motion.  (Docket No. 222 at pp.
31-34, 38-49.)  The Court declined to revisit its previous rulings
and denied Bauzo's motion, finding the evidence sufficient to
support his conviction.  _Id._ at pp. 39-40.

On October 17, 2014, after four days of trial, the jury found
Bauzo guilty of one count of possession of a firearm by a convicted
felon, in violation of 18 U.S.C. § 922(g)(1).  (Docket No. 206.)

**_The Post-Trial Proceedings_**

On December 7, 2014, Bauzo again moved for a judgment of

---

[11] Upon the letter's introduction, the Court also informed the jury:
"[T]his document has been redacted, which means that certain matters in
the document that are not relevant to the case have been crossed out.
Only that part of the document that is relevant to this case is available
for your consideration."  (Docket No. 220 at p. 58.)

acquittal, (Docket No. 224),[12] and the following day, he moved for a new trial, (Docket No. 225).[13]   The government opposed both motions.  (Docket Nos. 232, 233.)

## DISCUSSION

### *Motion for a Judgment of Acquittal*

Bauzo moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal on sufficiency of the evidence grounds.  (Docket No. 224 at p. 3.)   A court may set aside the jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29.  The essential question on a Rule 29 motion is whether a reasonable factfinder could have concluded, based on the body of proof as a whole, that the defendant committed the charged crime.  See Valerio, 676 F.3d at 244; United States v. Cruz-Rodriguez, 541 F.3d 19, 26 (1st Cir. 2008).  In answering, a court "take[s] into account all evidence,

---

[12] Specifically, Bauzo asked this Court to review its prior denial of his initial Rule 29 motion.  (Docket No. 224 at p. 1.)  This request complies with subsection (c) of Rule 29, which permits a defendant to renew a motion for a judgment of acquittal after jury verdict or discharge.  See Fed. R. Crim. P. 29(c).

[13] Generally speaking, a defendant has fourteen days from the jury's guilty verdict to move for a judgment of acquittal, or renew such a motion, see Fed. R. Crim. P. 29(c)(1), and to move for a new trial (absent newly-discovered evidence), see Fed. R. Crim. P. 33(b)(2).  In this case, the guilty verdict occurred on October 17, 2014.  (Docket No. 206.)  On October 20, 2014, Bauzo requested additional time to file his motions, (Docket No. 211), which the Court granted, ordering the motions be filed no later than December 8, 2014, (Docket No. 213).  Bauzo's motions, filed on and before the Court-imposed deadline, are therefore timely.

both direct and circumstantial, and resolve[s] evidentiary conflicts and credibility disputes in favor of the jury's verdict." Valerio, 676 F.3d at 244; accord United States v. Savarese, 686 F.3d 1, 8 (1st Cir. 2012).  In other words, while the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict is pervasive in the mind of the tribunal-inquisitor.  The Court need only satisfy itself that the guilty verdict "finds support in a plausible rendition of the record." See, e.g., United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012).  Against this backdrop, the First Circuit Court of Appeals has called the sufficiency of evidence challenge "a tough sell," Polanco, 634 F.3d at 45, and has warned that defendants seeking acquittal on this basis "face an uphill battle," United States v. Perez-Melendez, 599 F.3d 31, 40 (1st Cir. 2010); accord United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) ("These are daunting hurdles." (internal quotation marks omitted)).

     Bauzo was charged with violating 18 U.S.C. § 922(g)(1).  To convict him, the government had to prove three elements beyond a reasonable doubt: (1) that at the time Bauzo possessed the charged firearm, he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that Bauzo knowingly possessed the charged firearm; and (3) that Bauzo's possession of the firearm was in or affecting commerce.  See 18 U.S.C. § 922(g)(1).  Bauzo does not dispute that he is a felon

under the terms of the statute or that the firearm in question was related to interstate commerce; instead, he argues that the government did not carry its burden as to the second element because "[its] evidence was insufficient to prove beyond a reasonable doubt that [he] possessed that firearm." (Docket No. 224 at p. 3.)  The Court disagrees.

To satisfy the "knowing possession" element of 18 U.S.C. § 922(g)(1), the government may prove either actual or constructive possession of the charged firearm.  <u>United States v. Guzman-Montanez</u>, 756 F.3d 1, 8 (1st Cir. 2014).  "Actual possession" is "immediate, hands-on physical possession."  <u>Id.</u>  "Constructive possession" exists when the defendant knowingly has the power and intention at a given time to exercise dominion and control over the firearm, either directly or through others.  <u>See United States v. McLean</u>, 409 F.3d 492, 501 (1st Cir. 2005).

Regardless of the form, the government may use direct or circumstantial evidence to prove possession, and circumstantial evidence alone may support a conviction.  <u>Guzman-Montanez</u>, 756 F.3d at 8.  For constructive possession, "the requisite knowledge and intention can be inferred from circumstances, such as a defendant's control over the area where the [firearm] is found."  <u>McLean</u>, 409 F.3d at 501.  Mere proximity to the firearm is insufficient; "[t]here must be some action, some word, or some conduct that links

the [defendant] to the [firearm] and indicates that he had some
stake in it, some power over it." See id.

     In this case, the government provided ample direct and
circumstantial evidence proving that Bauzo possessed the pistol.
To begin, Agent Santos testified that on the night of July 24,
2012, he saw Bauzo, "who was [standing] exactly by the driver's
side door" of a black Mercedes-Benz vehicle, "grab[] a pistol that
he had in his waistband [of his pants], . . . [take] it out, . . .
open[] the black Mercedes-Benz vehicle[,] and throw[] the pistol
inside." (Docket No. 220 at pp. 72-73.) This is direct evidence
of actual, "hands-on physical" possession, albeit fleeting. See
United States v. DeCologero, 530 F.3d 36, 67 (1st Cir. 2008)
("Possession, whether actual or constructive, can be extremely
brief: 'a minute of possession is as much an offense as a year of
possession.'" (quoting United States v. Zavala Maldonado, 23 F.3d
4, 8 (1st Cir. 1994)); United States v. Mercado, 412 F.3d 243, 251
(1st Cir. 2005) ("Even if the evidence established only that [the
defendant] held the firearm for a few seconds, he could properly be
convicted of possession within the meaning of [18 U.S.C.] §
922(g).").

     Agent Santos further testified that he got out of his patrol
car and asked Bauzo whether he had a permit to carry a firearm;
when Bauzo answered that he did not, Agent Santos asked Bauzo to
come with him to the Mercedes-Benz vehicle, whereupon Agent Santos

"opened the [closed but unlocked] door to the vehicle" and "saw the [pistol] on the side where the driver would place his feet." (Docket No. 220 at pp. 74-76.)  Agent Santos's retrieval of the firearm in the vehicle moments after seeing Bauzo put it there provides additional evidence that Bauzo was in possession of the pistol.  See Guzman-Montanez, 756 F.3d at 9 ("[The defendant] was seen with the pistol before entering the bathroom, and was without it when he walked out.  He was also the last person to enter and exit the bathroom before the weapon was found. [The police officer's] observations, thus, provided sufficient evidence to prove [the defendant] was in constructive possession of the [gun] found in the bathroom."); cf. United States v. Liranzo, 385 F.3d 66, 70 (1st Cir. 2004) ("Since the jury heard evidence that the gun must have been placed in its final position after the [car] came to a complete stop, and that none of the other occupants in the car could have put it there, the jury could have inferred that [the defendant's] reaching movement was not innocent, but a move to put the gun under the seat.").

What is more, Agent Santos testified that, at the police station on the night of his arrest, Bauzo told him that he carried the firearm for his safety because he sold jewelry and clothing, a statement corroborated by the recovery of those items in the SUV during a later inventory of the vehicle.  (Docket No. 220 at pp. at 84-85.)  While Bauzo's post-arrest statements are in of themselves

inculpatory, his statements taken together with the items found in the SUV provide circumstantial evidence of a motive to possess the pistol.  See United States v. Williams, 717 F.3d 35, 41 n.3 (1st Cir. 2013) ("[E]vidence of motive and opportunity can serve as circumstantial evidence that helps to show constructive possession.").[14]

Given this factual composite (sketched in the light most flattering to the prosecution), a levelheaded jury could have easily deduced that Bauzo knowingly possessed the pistol found on the floor of the SUV.  Bauzo was seen removing a pistol from his person and putting in the exact place it was later discovered, and he made more than one incriminating statement disclosing as much. This is not a case of mere proximity or attenuated possession; in addition to providing evidence of Bauzo's hands-on possession of the pistol, the government also put forth evidence of Bauzo's ability and intention to exercise dominion and control over it. The Court is satisfied that enough evidence existed to support sufficiently the jury's determination that Bauzo possessed the pistol.

In an effort to upset the jury's verdict, Bauzo asserts that Agent Santos's testimony was, in his view, inconsistent the testimony of other witnesses to the events of the night in

_____

[14] That Bauzo also made an inculpatory statement to the Court in the May 20 Letter, written almost two years after the dust of his arrest had settled, lends additional support as to his guilt.

question, including that of another police officer. (Docket No. 224 at pp. 3-5.) Bauzo also alleges that Agent Santos was impeached with his prior testimony concerning what exactly Bauzo was doing upon Agent Santos's arrival. Id. at p. 5. However, "[t]he mere existence of conflicting testimony does not render evidence insufficient," Guzman-Montanez, 756 F.3d at 9, and "[e]vidence does not become legally insufficient merely because of some inconsistencies in witnesses' testimony," United States v. Rodriquez, 457 F.3d 109, 119 (1st Cir. 2006).

While Bauzo's arguments perhaps had teeth before the jury, they are wholly without bite on this motion. The Court's duty on a motion for judgment of acquittal is a limited one: "to make sure the evidence is sufficient to support the conviction." Guzman-Montanez, 756 F.3d at 10; accord Liranzo, 385 F.3d at 70 ("It is not the role of the reviewing court to weigh the evidence; [it is] merely to ensure that some evidence exists to support sufficiently the jury's determination."). The Court resolves all credibility issues in favor of the jury's verdict. See United States v. Rodriquez-Velez, 597 F.3d 32, 40 (1st Cir. 2010) ("[W]here, as here, the evidence can be viewed in different ways, we must honor the jury's evaluative choice among plausible, albeit competing, inferences."); see also Polanco, 634 F.3d at 45 ("[W]e must assume that the jury credited the prosecution's evidence and drew inferences in its favor, *not* [defendant's].")). From this

lens, the Court finds that Agent Santos's depiction of the facts offers a "plausible rendition" of Bauzo's possession of the pistol.

Finally, Bauzo insists that acquittal is warranted because the Court stumbled in denying his suppression motion. (Docket No. 224 at p. 5.) Specifically, Bauzo argues that "[t]he testimony during the trial clarified that the police officers had no probable cause to search Bauzo or his vehicle"; that "any search done by the police officers was without a warrant, . . . consent[,] and . . . exigent circumstances"; and that the Court "must rule that the evidence presented before the jury could not be considered." Id. Bauzo's suppression arguments, however, were amply heard prior to Judge Cerezo's order denying his motion to suppress. (Docket No. 81.)[15] Bauzo raised suppression again at trial, but this Court refused to reconsider the matter. (Docket No. 222 at pp. 33-34.) Bauzo's latest attempt at resurrecting the debate fares no better. The Court sees no reason in the motion to breathe life into the suppression issue and questions whether a Rule 29 motion is the proper vehicle for advancing this grievance.[16]

---

[15] Judge Cerezo denied Bauzo's motion only after having heard the witnesses' live testimony at the second suppression hearing. See Docket No. 81 at p. 5; see also Docket Nos. 70, 76. Judge Cerezo also had the benefit of reviewing the transcripts of the initial suppression hearing, the magistrate's report and recommendation as to the suppression motion, and the parties' corresponding briefs. See Docket No. 70 at p. 5; see also Docket Nos. 77, 78.

[16] As Bauzo's Rule 29 motion is based on sufficiency of the evidence grounds, the Court reviews the trial record as a whole. In assessing the sufficiency of the evidence presented at trial, the Court's review thus presupposes admissibility.

In sum, the Court is satisfied that the government introduced sufficient evidence on the element of possession to ground Bauzo's 18 U.S.C. § 922(g)(1) conviction.  Bauzo's Rule 29 motion, (Docket No. 224), is therefore **DENIED**.

### Motion for a New Trial

Bauzo also moves, pursuant to Federal Rule of Criminal Procedure 33, for a new trial.  (Docket No. 224.)  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The defendant may base his motion for a new trial on newly discovered evidence or on other grounds.  See Fed. R. Crim. P. 33(b).  A district court has greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal.  United States v. Merlino, 592 F.3d 22, 33 (1st Cir. 2010).[17]  "A new trial is granted sparingly," however, "and only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." United States v. Gonzalez-Perez, No. 12-1743, 2015 WL 300967, at *9 (1st Cir. Jan. 23, 2015); United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001).

---

[17] For example, when a sufficiency of the evidence challenge is made pursuant to Rule 33, the reviewing court may evaluate the weight of the evidence and the credibility of the witnesses.  Merlino, 592 F.3d at 32.  As discussed supra, this is not the case when a sufficiency challenge is brought in the context of a Rule 29 motion.  Although sufficiency of the evidence arguments may be presented in a Rule 33 motion, Bauzo's sufficiency challenge is confined to his Rule 29 motion.

Here, Bauzo argues that "the admission of the [May 20 Letter] without proper authentication was error beyond reasonable doubt, because the matter of the defendant's confession would have been an issue of credibility for the jury, which might have opted to acquit," and thus warrants a new trial.  (Docket No. 225 at p. 3.) While leaving much to the imagination, Bauzo's motion restates his position that the government did not properly authenticate the letter, as required by Federal Rules of Evidence 901 and 1007.

As an initial matter, Bauzo's reliance on Rule 1007 is misplaced.  Rule 1007 is an exception to Rule 1002, or the "best evidence rule."  In pertinent part, Rule 1002 requires a party seeking to prove the content of a writing to submit the original writing.  <u>See</u> Fed. R. Evid. 1002.  If, however, the original is unavailable, then "other evidence of the content of a writing . . . is admissible."  <u>See</u> Fed. R. Evid. 1004.  Rule 1007 provides for one form of such "other evidence" to prove the content of a writing: "testimony, deposition, or written statement of the party against whom the evidence is offered."  Fed. R. Evid. 1007.  But here, the original May 20 Letter was filed to the Court and was plainly made available to both parties.  At trial, the government introduced two excerpted versions of the letter: a redacted certified copy of the original letter in Spanish and its certified English translation.  <u>See</u> Docket No. 209 at p.1 ("Gov-3"); <u>see also</u> Docket Nos. 173-1, 173-2.  The certified copies are admissible

pursuant to Rule 1003, another exception to the best evidence rule, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." See Fed. R. Evid. 1003.  Because the Court finds that sufficient evidence exists to conclude reasonably that Bauzo authored the letter, see infra, the certified redacted copy and its undisputedly accurate certified translation are admissible as duplicates.[18]

Bauzo's arguments regarding authentication are similarly doomed.  The authentication issue here is whether Bauzo really authored the May 20 Letter.  Under the Federal Rules of Evidence, the authentication of evidence is a condition precedent to its admissibility.  McMahon, 938 F.2d at 1508.  To satisfy the authentication requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent

---

[18] To the extent the government used as its exhibit a translated copy of the original letter, it did so in compliance with the local rules and federal law, both of which contain an English-language requirement. See D.P.R. Local Civ. R. 5(g) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts."); cf. 48 U.S.C. § 864 (the "Jones Act") ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language.").  And to the extent the government redacted the original letter, it did so to prevent the jury from hearing otherwise inadmissible evidence.  For example, the government redacted personal information about Bauzo's detention whereabouts and information related to sentencing. See Docket No. 220 at pp. 4-7, 54.

claims it

is." <u>See</u> Fed. R. Evid. 901(a).  "The determination of whether a

proper foundation has been laid for the introduction of evidence

lies within the sound discretion of the district court." <u>McMahon</u>,

938 F.2d at 1508.  Once the court determines that the preliminary

threshold of authentication has been satisfied, the weight to be

given to the evidence is left to the jury.  <u>United States v.</u>

<u>Murdock</u>, 699 F.3d 665, 670 (1st Cir. 2012); <u>United States v.</u>

<u>Garcia</u>, 452 F.3d 36, 40 (1st Cir. 2006).

Bauzo contends that the government failed to comply with Rule

901, which he argues requires that a handwriting be authenticated

in one of three ways: "by a witness with knowledge that they saw

him write it"; "by the opinion of a[] non-expert in handwriting";

or "by an expert witness."  (Docket No. 225 at p. 3.)  The Court

again rejects this contention.  Rule 901(b) provides examples of

the means by which a document may be authenticated, including

testimony of a witness with knowledge; nonexpert opinion about

handwriting; and comparison by an expert witness.  <u>See</u> Fed. R.

Evid. 901(b)(1)-(3).  These are three possible avenues to

authentication, but more routes exist.  <u>Cf.</u> <u>Garcia</u>, 452 F.3d at 40

(finding the direct testimony of a custodian or a percipient

witness "is not a *sine qua non* to the authentication of a

writing"); <u>United States v. Thompson</u>, 449 F.3d 267, 274 (1st Cir.

2006) ("A document need not be signed or proven to be in the

defendant's handwriting to be authenticated."); McMahon, 938 F.2d
at 1508 (rejecting the implication that the government was required
to authenticate an unsigned note, purportedly written by the
defendant, through lay witness testimony as to handwriting).
Indeed, Rule 901(b)'s list is manifestly illustrative and
incomplete. See Fed. R. Evid. 901(b) (providing "examples only--
not a complete list--of evidence that satisfies the
[authentication] requirement [of Rule 901(a)]"). "There is no
single way . . . to authenticate evidence." Garcia, 452 F.3d at
40. The government, thus, had no obligation to authenticate the
letter in accordance with the three Bauzo-prescribed methods.

Consistent with the ruling at trial, the Court agrees with the
government that "enough evidence was submitted to conclude that the
document was 'what the proponent claimed it was.'" (Docket No. 233
at ¶ 23.)[19] Pursuant to Rule 901(b)(4),[20] "a document's appearance,
contents, substance, internal patterns, or other distinctive
characteristics, taken in conjunction with circumstances, can, in
cumulation, even without direct testimony, provide sufficient

---

[19] Alternatively, the government argues that the letter was self-
authenticating as a publicly-filed court document. (Docket No. 233
at ¶¶ 18-20.) Rule 902(4) dispenses with extrinsic evidence of
authentication for certified copies of public record under certain
conditions. See Fed. R. Evid. Rule 902(4). Because the Court finds
that the letter was properly authenticated pursuant to Rule 901, however, the
self-authentication argument need not be addressed.

[20] Rule 901(b)(4) provides that evidence may be authenticated by
"[a]ppearance, contents, substance, internal patterns, or other
distinctive characteristics, taken in conjunction with circumstances."
Fed. R. Evid. 901(b)(4).

indicia of reliability to permit a finding that it is authentic."
Garcia, 452 F.3d at 40.  As such, the Court was well within its
discretion in determining that there was sufficient evidence to
conclude that the document was what it purported to be: a letter
written to the Court by the defendant, Bauzo.  The letter was
written in first-person and contains the identifying phrase, "I,
Jaime Bauzo Santiago," along with the defendant's inmate number;
the letter concluded with the defendant's signature; both the text
of the letter and its envelope indicated the letter was addressed
to Judge Cerezo, the judge originally assigned to the defendant's
case; the letter's envelope contained the defendant's name, inmate
number, and correctional facility detention location for the return
address; and the letter contained details about the defendant's
case, such as the magistrate case number, the name of the
defendant's attorney at the time, and a reference to a weapons act
charge.  See Docket No. 173-1.  This evidence amply supports the
reasonable conclusion that Bauzo authored the letter.  See
Thompson, 449 F.3d at 274 (finding the district court did not abuse
its discretion in admitting as defendant's own incriminating
statement an anonymous handwritten letter his alleged
co-conspirator received in jail one week after his arrest, though
the prosecution failed to show by handwriting analysis that
defendant had written letter, where letter's content precisely fit
defendant's circumstances and predicament, and return address was

defendant's residence); <u>McMahon</u>, 938 F.2d at 1508-09 (finding
unsigned note sufficiently authenticated based on circumstantial
indicia of authorship, where note was written in first-person and
"repeated nearly verbatim the content of a conversation conducted
between [defendant] and [the note's recipient]").  While the jury
was entitled to question its maker or devalue its weight, the
letter was sufficiently authenticated to be admissible.[21]

Having determined that no evidentiary error occurred, and
because Bauzo asserts no other grounds for that relief in his
motion, the Court concludes that a new trial is unwarranted.  This
is not the rare case where a miscarriage of justice would otherwise
result.  Bauzo's motion, (Docket No. 225), is therefore **DENIED**.

## CONCLUSION

For the reasons discussed above, Bauzo's motion for a new
trial, (Docket No. 225), and his motion for a judgment of
acquittal, (Docket No. 224), are **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 6, 2015.


s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[21] Authenticity does not, in of itself, beget admissibility.  Here, the
letter was admitted into evidence as a statement of the defendant offered
against him, pursuant to Federal Rule of Evidence 801(d)(2)(A).  <u>See</u>
Docket No. 159 at p. 4.