# United States Court of Appeals
## For the First Circuit

No. 15-1280

UNITED STATES OF AMERICA,

Appellee,

v.

JAIME BAUZÓ-SANTIAGO,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Jorge E. Rivera-Ortíz for appellant.
Mainon A. Schwartz, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Nelson Pérez-Sosa, Assistant United States
Attorney, were on brief, for appellee.

August 8, 2017

**THOMPSON**, **Circuit Judge**.  The case up today presents us with a cautionary tale of what not to say and who not to say it to, and the consequential aftermath which can flow from such a slip-up.  Here's what happened.

BACKGROUND[1]

On July 24, 2012, a Puerto Rico Police officer out on patrol watched Bauzó pull a pistol out of the waistband of his pants and pitch it into a black SUV.  The officer approached Bauzó and asked him whether he had a license to carry a firearm.  When Bauzó said no (spoiler alert:  this isn't "THE" slip-up; read on) the officer walked over to the SUV, opened the door, and spotted the gun on the floor of the driver's side of the car.  The officer seized the gun and arrested Bauzó.  At the police station, an officer read Bauzó his rights.  Then (spoiler alert:  this isn't "IT" either) Bauzó admitted he was carrying the pistol for his protection (he sold jewelry and clothing).

At some point before trial would begin, Bauzó (via his court-appointed attorneys) and the government discussed the

---

[1] Favorably to Bauzó, and because our presentation of the facts does not impact the outcome of his appeal, we present the few facts necessary to understand this case in a balanced manner.  See, e.g., United States v. Gonsalves, 859 F.3d 95, 99 n.1 (1st Cir. 2017) (citing United States v. Rodríguez-Soler, 773 F.3d 289, 290 (1st Cir. 2014) and United States v. Burgos-Montes, 786 F.3d 92, 99 (1st Cir. 2015)) (taking a similar tack in similar circumstances and noting lack of clarity on how we present facts in cases where defendant does not challenge the sufficiency of the evidence).

possibility of a guilty plea.  But apparently things weren't going so well between Bauzó and his lawyers.  In an ex-parte motion to withdraw, Bauzó's attorneys stated, "[Bauzó] believes that his counsels have not worked diligently in negotiating a plea agreement and he does not trust their professional opinions"; his "animosity toward them is evident."  The motion went on, the attorneys had visited Bauzó in prison on March 7 and 11, 2014, "intend[ing] to discuss separate plea offers extended by the government," but Bauzó "completely discarded the offers tendered by counsels."  The attorneys also complained that Bauzó had no interest in helping them prepare for trial.  Bauzó said he had sent a motion to the trial court via the prison mail system but, the attorneys continued, the motion's "content is unknown."

On May 20, 2014, a hand-written letter (reader--this is "THE SLIP") postmarked March 12, 2014, was entered on Bauzó's docket as a motion to appoint counsel.  Bauzó was identified as the author, and the letter was addressed to Judge Carmen Consuelo Cerezo (the judge presiding over Bauzó's case at the time).  Here's what that letter said:

> I have a situation with my lawyer . . . he has no interest in my case [and] I do not have good communications with the lawyer . . . Because of these reasons I would like to ask of the Honorable Judge to change counsel . . . if possible.  I want to take advantage to notify you that I, Jaime Bauzó Santiago . . . have always accepted my responsibility as to guilt, the only thing that I

ask of you is that the time for the weapons law
crime be a reasonable one.

The letter was signed "Jaime Bauzó Santiago."

The trial court granted Bauzó's now-ex lawyers' ex-parte
motion to withdraw and appointed new counsel on May 28, 2014.

## Trial Proceedings

Fast forward four months. No plea deal had been reached,
and the government (in preparation for trial) added the March 12th
letter to its trial exhibit list. Bauzó filed a motion in limine
to exclude the letter "purportedly sent" by him--he claimed it was
a statement made during plea negotiations under Federal Rule of
Evidence 410, its admission would be unfairly prejudicial under
Rule 403, and that under either rule the government should not be
allowed to introduce the letter. The court denied his motion.

At trial, the government moved to admit the letter into
evidence as exhibit 3. By way of foundation, an agent with the
Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who
worked on Bauzó's case testified that he went to the clerk's
office, requested a copy of Docket Entry 94, and received Bauzó's
letter. Bauzó objected and asked the government to explain how it
intended to authenticate the letter as a document written by him.
The government countered that it was for "the jury to decide and
give the weight they can give to that handwriting and statement
admission." The court noted that the letter bore Bauzó's

signature, overruled his objection, and permitted the government
to admit the letter.  The admitted version, redacted to remove any
reference to plea bargaining or the dispute between Bauzó and his
lawyers, read in relevant part as follows:    "I want to take
advantage to notify you that I, Jaime Bauzó Santiago . . . have
always accepted my responsibility as to guilt for the weapons law
crime."  On cross-examination, the agent said he did not know who
wrote the letter, or whether the signature and handwriting were
authentic--he just picked it up at the clerk's office.    Then at
the government's request--and with no objection from Bauzó--the
court took judicial notice of the fact that "Judge Cerezo was the
original judge assigned to this case . . . and that this document,
docket number 94, is still part of the docket of the case."  Later,
the government introduced a copy of the Miranda warnings that Bauzó
signed at the station.    A second ATF agent testified that she
witnessed Bauzó sign the warnings and write his name.

        The government put on other evidence in its case against
Bauzó that is relevant to our task here on appeal.  Most notably,
the jury heard testimony from the Puerto Rico Police officer who
saw Bauzó toss the gun, who arrested Bauzó, and to whom Bauzó
admitted that he did not have a license for the gun.

        After the close of the evidence and the jury instructions
(which we address at greater length below), the jury convicted

Bauzó of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## Sentencing

Bauzó was sentenced on February 12, 2015. The Pre-Sentence Investigation Report ("PSR") determined that Bauzó qualified as a career criminal under the Armed Career Criminal Act ("ACCA") because he had at least three violent felony convictions. We will get into the particulars of his sentence later; for now we note only that the court did not indicate which of Bauzó's prior convictions were predicates, and that Bauzó did not object to his career-offender categorization. As a result, Bauzó was subject to a mandatory-minimum sentence of fifteen years and a career-offender Guidelines sentencing enhancement. Ultimately, he was sentenced to fifteen years and eight months in prison.

Bauzó appealed, and that brings us up to today.

## ANALYSIS

Here on appeal, Bauzó raises three challenges to what happened below. First, he argues that the district court erred by admitting his letter under Rule 410. Second, he challenges the district court's end-of-trial judicial-notice jury instruction, claiming it made the jury think he wrote the letter (and so admitted to doing the crime he was on trial for committing). And finally, he says the court erred in finding that he qualified as a career criminal. We review each of these challenges in turn,

but finding none have merit, we reject them all and affirm his sentence.

## The Letter

Bauzó argues that the district court erred by admitting his letter under Rule 410, which prohibits the use of certain plea-bargain-related statements against a defendant in later proceedings. Specifically, Bauzó claims that the letter's admission was contrary to Rule 410's purpose of encouraging plea bargaining, so the district court erred by letting the government use it against him at trial as evidence of his guilt. The government disagrees with Bauzó about the purpose of the rule, and further contends that because the letter is admissible under the rule's plain language, the court did not err in admitting it.

We review a district court's evidentiary rulings for abuse of discretion. <u>Burgos-Montes</u>, 786 F.3d at 114. This ruling rested on an interpretation of law, so we review that de novo. <u>Id.</u> We find that the district court did not abuse its discretion in admitting the letter. Here is why Bauzó's arguments don't hold water.[2]

_____

[2] We note that Bauzó did not challenge the act that brought the letter to the government's attention to begin with--the district court's entry of the letter on the public docket. The defendant's apparent purpose in writing the letter was to ask for Judge Cerezo's help in securing adequate representation, so making this letter available to the government--then permitting the government to use the letter against Bauzó--may undermine Bauzó's Sixth Amendment right to representation. <u>Cf.</u> <u>United States</u> v.

The Federal Rules of Evidence are congressional enactments, so we apply the traditional tools of statutory interpretation to determine their meaning and scope. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163 (1988). That means we start with the text of the rule. Id. We must give effect to the rule's plain meaning, "unless it would produce an absurd result or one manifestly at odds with the [rule's] intended effect." Colón-Marrero v. Vélez, 813 F.3d 1, 11 (1st Cir. 2016) (quoting Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 858 (1st Cir. 1998)). Indeed, "resort to legislative history typically is inappropriate when the meaning of a [rule] is plainly discernible from its words." United States v. Rivera, 131 F.3d 222, 226 (1st Cir. 1997) (en banc). In considering the meaning of the text, we read a legislative enactment as a whole, "since the meaning of statutory language, plain or not, depends on context." Id. at 225 (quoting Conroy v. Aniskoff, 507 U.S. 511, 515 (1993)). We consider the rule's history, too, bearing in mind that we must read an amendment to mean that the legislature intended a substantive change in the law. Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).

---

Beverly, 993 F.2d 1531, at *1 (1st Cir. 1993); United States v. Aguirre, 605 F.3d 351, 358 (6th Cir. 2010) (holding that where a defendant "has disclosed truthful information to demonstrate financial inability [to] obtain counsel under the Sixth Amendment, that information may not thereafter be admitted against him at trial on the issue of guilt"). But again, Bauzó raised no such argument on appeal, so we leave it at that.

So, we start with the text of the relevant portion of
Rule 410, which prohibits the government from using, in a criminal
case against a defendant who participated in plea discussions, "a
statement made during plea discussions with an attorney for the
prosecuting authority if the discussions did not result in a guilty
plea or they resulted in a later-withdrawn guilty plea."  Fed. R.
Evid. 410(a)(4).  Bauzó rightly concedes that the plain language
of the rule did not require the judge to exclude his letter--after
all, Bauzó wrote it to the trial judge, not to "an attorney for
the prosecuting authority" as the rule plainly requires.  As the
government points out, we've been sticklers about that requirement
in the past.  Rule 410 "has been consistently interpreted by the
courts to protect only those statements made by a defendant to the
prosecuting attorney [herself]."  <u>United States</u> v. <u>Pérez-Franco</u>,
873 F.2d 455, 461 (1st Cir. 1989) (collecting cases finding plea-
related statements to non-prosecutors admissible); <u>see</u> <u>United
States</u> v. <u>Aponte-Suárez</u>, 905 F.2d 483, 493 (1st Cir. 1990)
("[Defendant's] statement was made to government agents, not to an
attorney.  That alone removes the statement from the purview of
Rule 410[a](4).").  Ordinarily that would be the end of the
inquiry.

But, Bauzó argues that the text is not determinative
because the admission of his letter under this plain-meaning
interpretation undermines the very purpose the rule was written to

serve.  His contention obliges us to consider the history of the rule to determine "whether there is a clearly expressed legislative intention contrary to the [rule's] language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses."  <u>Rivera</u>, 131 F.3d at 226 (second alteration in original) (citation and internal quotation marks omitted).  As Bauzó points out, the purpose of Rule 410 is "the promotion of [the] disposition of criminal cases by compromise . . . . [Indeed,] [e]ffective criminal law administration in many localities would hardly be possible if a large proportion of the charges were not disposed of by such compromises."  Fed. R. Evid. 410 advisory committee's note to 1972 proposed rules (citation omitted).  Plea bargaining is "essential to the functioning of the criminal justice system[, and] '[p]roperly administered . . . it is to be encouraged.'"  <u>United States</u> v. <u>Penta</u>, 898 F.2d 815, 817 (1st Cir. 1990) (quoting <u>Santobello</u> v. <u>New York</u>, 404 U.S. 257, 260 (1971)).  Rule 410's exclusionary rule furthers the purpose of encouraging plea negotiations by shielding plea-seeking defendants from one risk of dishing to the other side--after all, if a defendant thought his plea-bargain pillow talk with the prosecutor would be turned against him in a later prosecution, that defendant might just keep his lips zipped.  <u>See</u> <u>id.</u> (discussing analogous provision of Fed. R. Crim. P. 11); Fed. R. Crim. P. 11 advisory committee's note to

1979 amendments (purpose of Rule 410 is "to permit the unrestrained candor which produces effective plea discussions");[3] United States v. Stirling, 571 F.2d 708, 731 (2d Cir. 1978) ("[F]or plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." (quoting Herman, 544 F.2d at 796)).

Consistent with Bauzó's proposed reading of Rule 410's purpose, the rule once provided that "an offer to plead guilty . . . to the crime charged or any other crime, or . . . statements made in connection with . . . [such a] plea[] or offer[], is not admissible in any civil or criminal action . . . against the person who made the plea or offer." Act of Jan. 2, 1975, Pub. L. No. 93-595, 88 Stat. 1926; see Herman, 544 F.2d at 795 n.7 (discussing statutory history of the rule between 1975 and 1976). Bauzó's letter may well have been excluded under this version of the rule-- indeed, his letter may well be inadmissible under the pre-amendment-410 analogues in effect in some states today. See, e.g.,

---

[3] We refer to the history of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11 interchangeably here because, as originally enacted, Rule 410's provisions were to be "superseded by any inconsistent amendment" to Rule 11, United States v. Herman, 544 F.2d 791, 795 n.7 (5th Cir. 1977), superseded by Fed. R. Crim. P. 11(e) as recognized in Penta, 898 F.2d at 818, and for many years the two were "substantively identical," United States v. Mezzanatto, 513 U.S. 196, 200 (1995). See also Pérez-Franco, 873 F.2d at 460 n.6 (noting that Rule 410 conforms to Rule 11). Today, Rule 11 simply provides that the admissibility of plea-related statements is governed by Rule 410. Fed. R. Crim. P. 11(f).

<u>State</u> v. <u>Brown</u>, 792 N.W.2d 815, 823 (Minn. 2011) (defendant's response to judge's questions about his refusal to accept government's plea deal inadmissible "statement made in connection with an offer to plead guilty" under state rule identical to pre-amendment 410); <u>Hill</u> v. <u>State</u>, 768 So. 2d 518, 520 (Fla. Dist. Ct. App. 2000) (defendant's letter to judge acknowledging wrongdoing, offering to plead guilty held inadmissible under Fla. Stat. Ann. § 90.410 ("an offer to plead guilty" and "statements made in connection with any of the pleas or offers" are "inadmissible in any civil or criminal proceeding")); <u>People</u> v. <u>Magana</u>, 22 Cal. Rptr. 2d 59, 61 (Ct. App. 1993) (observing that state rule barring evidence of defendant's offers to plead guilty has applied to affidavit submitted to trial court).

But here's the rub:  the rule was amended in 1979 to clarify that it only excludes statements made to "an attorney for the prosecuting authority." Fed. R. Evid. 410(a)(4); <u>see</u> <u>id.</u> advisory committee's note to 1979 amendments (rule changed to mirror Fed. R. Crim. P. 11).  The rule's 1979 amendments were designed to effectuate its purpose of producing "effective plea discussions between the '<u>attorney for the government</u> and the attorney for the defendant or the defendant when acting pro se'"-- a purpose the advisory committee thought was overshot by the "broader rule of inadmissibility" derived from a "literal reading of the language" of the original rule.  Fed. R. Crim. P. 11 advisory

committee's note to 1979 amendments (emphasis added); see 2 McCormick on Evid. § 266 (Kenneth S. Broun, et al. eds., 7th ed. 2016); cf. Olsen v. Correiro, 189 F.3d 52, 60 (1st Cir. 1999) (reach of Rule 410's plea-promotion policy is limited because "the plain language of the rule reflects Congress's balancing of the promotion of compromise against the admission of relevant evidence"). The substance of Rule 410 hasn't changed since. These advisory committee notes confirm that the "legislative intention" behind Rule 410 is reflected in the "language [Congress chose]"-- to exclude only statements made to an attorney for the prosecuting authority. Rivera, 131 F.3d at 226 (citation omitted). The amendment was designed to limit the scope of the rule by describing who the statement must be made to, and remember, we must read this amendment to create a substantive change in the law. See Blake, 136 S. Ct. at 1858. So, the 1979 amendments doubly foreclose Bauzó's argument.

One more thing convinces us that Bauzó's letter to the judge is not covered by Rule 410 (though at this point we doubt we need say more). Federal Rule of Criminal Procedure 11(c)(1) tells us what role the trial judge can have in plea negotiations: absolutely none. Although it was once a "common practice for a judge to participate in plea discussions," Rule 11 was amended in 1974 to prohibit the practice. Fed. R. Crim. P. 11 advisory committee's note to 1974 amendments. That means that the

prohibition was already part of Rule 11 when it was amended in 1979 to protect only plea-related statements to the prosecutor. See id. And remember, Rule 410 was amended to bring it into line with the text of Rule 11. Rule 11 (circa 1979) read as a whole, plus the parallel amendments to Rule 410, equal one more reason to believe that Rule 410 today does not exclude plea-related statements made to the judge. And with that, Bauzó's policy argument hits a dead end.

Bauzó raises two more points about Rule 410 that we address before we move on. First, he claims that United States v. Gotti, 457 F. Supp. 2d 395, 402 (S.D.N.Y. 2006), supports his Rule 410 argument and dictates that the letter should be excluded--but we disagree. In Gotti, the court excluded the titular mob boss's jailhouse statements that he wanted to "cop out" to the charges against him--without "saying I did it"--under Rule 403. Id. at 400, 402. (For those not in-the-know, Federal Rule of Evidence 403 permits a trial court to exclude otherwise-relevant evidence "if its probative value is substantially outweighed" by the danger of "unfair prejudice" to the movant.) But Gotti does not help Bauzó at all because the Gotti court excluded the statements under Rule 403, and Bauzó makes no 403-based argument here on appeal.

Of course, arguments not raised in the briefs are waived.[4]  See

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Bauzó also makes a backup argument--fairness dictates

that the letter be excluded.  This court has previously excluded

a defendant's plea-related confession because fairness required

it, even though the confession fell outside the letter of Rule

410:  in United States v. Ventura-Cruel, 356 F.3d 55, 62-63 (1st

Cir. 2003), the defendant wrote a confession to a probation officer

to mitigate his sentence after the district court accepted his

guilty plea, but when the court later rejected that plea it allowed

the government to introduce the letter at trial as evidence of the

---

[4] Indeed, even if Bauzó had pressed a 403-based argument on
appeal, his case is not in lockstep with Gotti.  The Gotti court
found the statements had essentially zero probative value as to
Gotti's guilt because they were "extraordinarily vague, lacking
any detailed admission of criminal conduct" and "undercut by
Gotti's denials that he committed the alleged crimes." Id.  Plus,
the evidence was cumulative of other prosecution evidence that the
charges were weighing on Gotti's mind (the government's other
purported reason for admitting the statements).  Id.  As to
prejudice, the Gotti court thought Rule 410's policy in favor of
encouraging plea agreements weighed against admitting the
statements because it might allow the jury to unfairly infer the
defendant's guilt from his interest in "copping" a plea.  Id.
Bauzó seizes onto this policy point, arguing that here the jury
was permitted to infer his guilt from his interest in pleading
guilty, too.  But Bauzó's case is distinguishable.  Unlike Gotti,
who expressed interest in a plea and disclaimed any wrongdoing in
the same breath, Bauzó accepted responsibility for his crime in
the letter.  So the jury is not inferring guilt simply from his
interest in pleading guilty, but from his admission to the charged
crime.  In other words, unlike the statements in Gotti, Bauzó's
have some probative value.  But again, Bauzó made no 403 argument
on appeal, so we give no opinion as to the merits of a hypothetical
403 claim.

defendant's guilt. There the fairness problem was clear-cut: after the court rejected defendant's plea, defendant was "deprived of the benefit of his plea bargain but the government was permitted to use his statements made in reliance on the bargain against him at his subsequent trial" nonetheless. Id. at 63-64. The same fairness concern does not come into play here because Bauzó was not lured into confessing with assurances that it would lead to a reduced sentence--he seems to have sent the letter completely of his own volition. Ventura-Cruel is simply not on Bauzó's level. And Bauzó gives us no other reason to believe that it was unfair for the court to admit the letter, except that the letter may have helped convince the jury of his guilt.[5] But that type of prejudice is not sufficient reason to exclude an otherwise lawfully obtained and voluntarily given confession. See United States v. Munoz, 36 F.3d 1229, 1233 (1st Cir. 1994).

To sum up, the policy of the rule, if it is indeed different from what is expressed in the text of the rule, does not extend to require the exclusion of Bauzó's plea-seeking letter to the judge.[6] Nor does Bauzó's fairness argument give us reason to

_____

[5] Indeed, when pressed on his fairness rationale at oral argument, Bauzó repeatedly circled back around to the prejudicial effect of the confession. And we note here that Bauzó's letter was not the only confession before the jury--the arresting officer also testified that he saw Bauzó with the gun, and that Bauzó admitted to carrying the gun.

[6] The only federal authorities interpreting this prong of the federal rule that we are aware of seem to have reached the same

find that the letter should be excluded. So as is par for the course in matters of statutory interpretation, the plain language and statutory history of Rule 410 tell us what we need to know: Bauzó's letter is admissible under the version of Rule 410 in effect today, and so the district court did not abuse its discretion in admitting the letter at trial.[7]

**The Jury Instruction**

Bauzó's next challenge is to the jury instruction on the issue of judicial notice, which he claims is clearly erroneous and so prejudicial that he is entitled to a new trial. Here's the challenged instruction:

> Instruction #5: Judicial Notice
>
> I believe that the fact that Judge Cerezo was the previous judge assigned to this case, that proceedings were heard before her and before Magistrate Judge Vélez-Rivé, that the transcripts

_____

conclusion as we do, albeit in passing. United States v. Schuster, 706 F.3d 800, 805 n.3 (7th Cir. 2013) (finding defendant's letter to judge, in which he admitted to crime but explained how bad he felt about it in the hopes of mitigating his sentence, was not inadmissible under Rule 410 because letter not a statement made in plea discussions with the prosecutor); see also United States v. Fernandez Martinez, 317 F. App'x 929, 938 (11th Cir. 2009) (letter to magistrate judge not inadmissible under Rule 410 because court cannot participate in plea discussions, magistrate not a prosecutor, and plea discussions not ongoing).

[7] Bauzó also contends that the district court erred in finding he was not engaged in plea discussions at the time he sent the letter. The letter's addressee--Judge Cerezo--is the dispositive point here, even if Bauzó was engaged in plea negotiations with the government at the time, so we need not address the argument. See Aponte-Suárez, 905 F.2d at 493 (taking the same tack under similar circumstances).

used during the trial are official transcripts and
that the document admitted as government exhibit 3
is filed in the case as docket number 94 can be so
accurately and readily determined that it cannot be
reasonably disputed. You may, therefore,
reasonably treat these facts as proven, even though
no evidence has been presented on these points. As
with any fact, however, the final decision whether
or not to accept them is for you to make. You are
not required to agree with me.

Zeroing in on the phrase "can be so accurately and
readily determined that it cannot be reasonably disputed," in
conjunction with the mention of the letter, Bauzó says the
instruction gave the jury the impression that the judge thought
Bauzó penned the letter and that its contents could not be
reasonably disputed. So, he continues, the instruction improperly
directed the finding of a contested fact--whether Bauzó wrote the
letter accepting responsibility for the crime he was on trial for
committing--and thereby deprived him of a fair trial. The
government counters that Bauzó is misconstruing the instruction:
taken as a whole, the instruction simply explains that the judge
believed the letter was filed on the docket. And that, the
government continues, is not an improper instruction. We agree.

Bauzó did not object to the instruction at trial, so we
review his claim for plain error.[8] "When applying the plain error

_____

[8] So to prevail on this claim, Bauzó "must show: (1) that an
error occurred (2) which was clear or obvious and which not only
(3) affected [his] substantial rights, but also (4) seriously
impaired the fairness, integrity, or public reputation of judicial
proceedings." United States v. Brown, 669 F.3d 10, 28 (1st Cir.

standard in the context of jury instructions, [this court] look[s] at the instructions as a whole to ascertain the extent to which they adequately explain the law without confusing or misleading the jury." United States v. Candelario-Santana, 834 F.3d 8, 27 (1st Cir. 2016) (alterations in original) (emphasis added) (quoting United States v. Fermin, 771 F.3d 71, 80 (1st Cir. 2014)), cert. denied, 137 S. Ct. 1112 (2017).

This instruction adequately explains the law. A trial court judge "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). And, if a judge takes judicial notice of a fact in a criminal case, it "must instruct the jury that it may or may not accept the noticed fact as conclusive." Id. 201(f). Bauzó himself agrees that the fact of the letter's docketing is a proper subject of judicial notice.[9]

2012) (quoting United States v. Fisher, 494 F.3d 5, 9 (1st Cir. 2007)).

[9] Indeed, Bauzó's backup argument is that the instruction was unnecessary because it was already given once before in what he describes as a more "neutral" way: "Ladies and Gentlemen of the Jury, I take judicial notice that Judge Cerezo was the original judge assigned to this case, it was then transferred to me, and that this document, docket number 94, is still a part of the docket of the case." Of course, this instruction does not explain to the jury the effect of judicial notice, nor does it explain what Rule 201 says a jury instruction must--that the jury need not accept the noticed fact as true. See Fed. R. Evid. 201(f). In any case, Bauzó does not explain why this mid-trial statement makes the end-of-trial instructions erroneous, and undeveloped arguments are

See <u>Kowalski</u> v. <u>Gagne</u>, 914 F.2d 299, 305 (1st Cir. 1990) (courts may take judicial notice of relevant court records). The instruction, drawn from the First Circuit's pattern jury instructions, mirrors the language of the rule and accurately states the law. See <u>Pattern Criminal Jury Instructions for the District Courts of the First Circuit</u> § 2.02; <u>United States</u> v. <u>Bello</u>, 194 F.3d 18, 25-26 (1st Cir. 1999). Bauzó does not argue otherwise.

What's more, the instructions read as a whole do not support Bauzó's interpretation. The instruction at issue tells the jury that the letter was entered on the district court's docket as entry ninety-four. And, the jury could treat that fact--the letter's docketing--as proven if it wanted to. The other facts noticed in the instruction--all procedural matters like the name of the previous district court judge and the fact that the transcripts were official--confirm this reading. The instruction says nothing about the content of the letter, nor can it reasonably be understood as an instruction that the contents of the letter are true. Accordingly, we cannot agree with Bauzó's contention that the instruction directed the jury to find Bauzó authored the letter, or that the instruction deprived him of a fair trial. <u>Cf.</u> <u>Bello</u>, 194 F.3d at 26 (judicial-notice instructions, even as to

waived. <u>Zannino</u>, 895 F.2d at 17.

elements of the crime, pose no constitutional concern where jury instructed that it need not accept noticed element-establishing fact as conclusive).

The instruction adequately explains the law and is not confusing or misleading. The instruction was not error--let alone a plain or obvious one--so we reject this claim, too.

### The Sentence

In his final point on appeal, Bauzó challenges his sentence. Bauzó's PSR found--and the parties agreed--that he had at least three career-offender predicate convictions, so he was sentenced as a career offender under 18 U.S.C. § 924(e)(1).[10] Bauzó now contends that the sentencing court erred in counting his prior convictions as violent felonies. The government argues that Bauzó's arguments are waived, but that even if they are not his claims cannot survive plain-error review. We address the waiver question first, then the parties' arguments about Bauzó's predicates.

---

[10] Bauzó was also subject to a Guidelines sentencing enhancement because he had "at least two prior felony convictions of . . . a crime of violence." U.S. Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2014). In part because of the application of this enhancement, Bauzó received a Guidelines range of 188 to 235 months--a range that exceeds his ACCA mandatory-minimum sentence of fifteen years, or 180 months. Although he mentions this point in his briefs, Bauzó's arguments are targeted only at ACCA. The government follows suit. So do we--undeveloped arguments are waived. See Zannino, 895 F.2d at 17.

## I. Waiver

The government's first line of attack: Bauzó's argument is waived. As the government points out, Bauzó (via his court-appointed attorney) identified himself as a career offender twice. First, in his response to the government's motion to introduce his letter, Bauzó pointed out that his "criminal history qualifies him for the sentencing enhancement found" in 18 U.S.C. § 924(e)(1). Second, when the sentencing judge pointed out that Bauzó "is an armed career criminal," Bauzó responded "[c]orrect." The government argues these concessions amount to waiver--an intentional relinquishment or abandonment of a known right--so we cannot review his sentencing arguments on appeal. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). Indeed, "an explicit concession can waive both existing and yet-to-be-recognized rights," and explicit concessions are exactly what we have here. United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (finding defendant's ACCA argument waived where he conceded career-offender status below, but excusing waiver in interests of justice because of an intervening change in law). For his part, Bauzó contends that we shouldn't hold him to his concession. We have the discretion to excuse waiver "where justice so requires," and Bauzó argues that justice requires us to forgive this waiver because of an intervening change in the law (we get to that below). Id.

But we need not decide whether Bauzó's argument is irreparably waived because his sentencing argument cannot survive even the plain-error standard of review we apply to forfeited claims. See United States v. Delgado-Sánchez, 849 F.3d 1, 7 (1st Cir. 2017) (taking the same approach under similar circumstances). Plain error requires Bauzó to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." Id. (citation omitted). As we explain, even if the sentencing court committed some error in assessing Bauzó's prior convictions, his claim fails at the third prong because he has not shown--or even argued--that any error affected his substantial rights.

## II. ACCA Explainer--The Context for Bauzó's Claims

Before we get into the details of Bauzó's claims, here's a brief ACCA primer to put his arguments in context. As we mentioned above, to qualify as a "career criminal" under the statute--and be exposed to the mandatory-minimum sentence--the government must show that a defendant has three qualifying convictions. 18 U.S.C. § 924(e)(1). As relevant here, a conviction qualifies if it is a "violent felony," id. § 924(e)(1)(B), meaning it has "as an element the use, attempted use, or threatened use of physical force against the person of

another," id. § 924(e)(2)(B)(i).[11] By physical force, the statute means "violent force . . . capable of causing physical pain or injury to another person." Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010). We determine whether an offense fits the bill using the so-called categorical approach: we check whether the elements of the crime of conviction require the government to prove the use, attempted use, or threatened use of physical force in order to convict. United States v. Castro-Vazquez, 802 F.3d 28, 35 (1st Cir. 2015) (citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)). If the crime is divisible--meaning it defines multiple crimes with different elements--then we follow the modified categorical approach. United States v. Serrano-Mercado, 784 F.3d 838, 843 (1st Cir. 2015). That means we look to certain documents known as "Shepard" documents (these include the indictment, the jury instructions, and the like) to determine which version of the divisible-statute crime the defendant committed, then check to see whether that version of the

---

[11] A conviction might also qualify if it is a "serious drug offense" or if it is one of the act's enumerated crimes of "burglary, arson, or extortion, [or] involves use of explosives." 18 U.S.C. § 924(e)(1), 924(e)(2)(B)(ii). The former does not apply here; the latter might--Bauzó has two prior convictions for aggravated burglary--but because we find the sentencing court did not commit a clear or obvious error in counting Bauzó's felony assault and firearms offenses as violent felonies, we need not reach the parties' burglary-related arguments.

crime is a violent felony under the categorical approach.  Id.
(citing Descamps, 133 S. Ct. at 2281).

The statute also says that crimes involving "conduct
that presents a serious potential risk of physical injury to
another" (the "residual clause") are violent felonies, too.  18
U.S.C. § 924(e)(2)(B)(ii).  But the residual clause was invalidated
as unconstitutionally vague in Johnson v. United States (Johnson
II), 135 S. Ct. 2551, 2563 (2015).  So, this road to ACCA-qualifier
territory is now closed.

### III. Bauzó's Predicates

Bauzó argues that he does not have three ACCA-qualifying
convictions so the sentencing court erred in considering him a
career offender.  His reasoning seems to go as follows:  His prior
convictions are divisible, so the sentencing court erred by failing
to apply the Descamps modified categorical approach to determine
whether any versions of his crimes of conviction were violent
felonies.  The sentencing court also failed to request the Shepard
documents to determine whether Bauzó was in fact convicted of a
career-criminal-qualifier version of any of the predicates
identified in the PSR, and that was error, too.  Had the court
done so, it's possible that the court would not find three
qualifying convictions in Bauzó's record.  Instead, the court's
career-criminal finding "appears to be implicitly premised on the
residual clause," which we now know to be unconstitutionally vague

under Johnson II--yet another error, he says.  Ergo, Bauzó claims he is entitled to remand for resentencing.  The government disagrees, arguing that even if the court erred, Bauzó has not shown that it impacted his substantial rights.

### a) The Descamps Error

We start with the alleged error the parties spill the most ink debating--whether the sentencing court erred in counting Bauzó's priors as ACCA-qualifiers notwithstanding its failure to follow the modified categorical approach.  Where the defendant's prior convictions are under divisible statutes, the sentencing court has committed a clear and obvious error in counting the prior conviction as a predicate "only if we [are] confident that none of the distinct offenses set forth" in the statute are violent felonies.  Serrano-Mercado, 784 F.3d at 845 (applying plain-error review to Guidelines career-criminal finding).[12]  Here, that is not the case.

Bauzó has two prior convictions under Article 5.15 of the Puerto Rico Penal Code for "discharging or pointing firearms."  P.R. Laws Ann. tit. 25, § 458n (2002).  He concedes that Article 5.15 is divisible--one version criminalizes willfully firing a gun

---

[12] We note here, as we pointed out in Serrano-Mercado, that ACCA's definition of a "violent felony" is "nearly identical" to the Guidelines' definition of a "crime of violence," and so "courts consistently have held that decisions construing one of these phrases generally inform the construction of the other."  784 F.3d at 843 n.4 (citation omitted).

in a place where there is a person who could be harmed, and another criminalizes intentionally pointing a gun towards a person. See Delgado-Sánchez, 849 F.3d at 10. He claims that version two-- pointing--is not a violent felony because it does not include an element of "violent force," that is force capable of causing pain or physical injury. But in Delgado-Sánchez, 849 F.3d at 11, we recently held that it was not a clear or obvious error for the sentencing court to count a conviction under version two of Article 5.15 as a crime of violence under § 4B1.2(a) of the Sentencing Guidelines because pointing a gun towards a person could be a "threatened use of physical force against the person of another." (And remember, the "threatened use of physical force" also satisfies § 924(e)(2)(B)(i).) See also United States v. Collins, 811 F.3d 63, 67 (1st Cir.) (finding Maine's offense of criminal threatening with a dangerous weapon is a crime of violence under the Guidelines), cert. denied, 136 S. Ct. 2397 (2016). Bauzó gives us no reason to second-guess that conclusion now. Under Delgado-Sánchez, the sentencing court did not commit an error that was clear or obvious in counting Bauzó's two Article 5.15 convictions as violent felonies.

Bauzó was also convicted of felony aggravated assault under Article 95. "Any person who used force or violence upon the person of another with the intent to injure him" has committed the misdemeanor version of this crime. P.R. Laws Ann. tit. 33, § 4031

(2001).[13]  The felony version--Bauzó's crime of conviction--can be committed in one of seven different ways, and so the parties agree that this statute is divisible, too.  Id. § 4032(2).  Bauzó argues that not all versions of the crime include an element of physical force capable of causing pain or injury, so the sentencing court clearly erred in counting his conviction as an ACCA predicate.  We disagree.  The felony enhancements include the infliction of "serious bodily injury . . . on the person assaulted" or the use of "deadly weapons under circumstances not amounting to an intent to kill or maim."  Id. § 4032(2)(b), (c).  Thus the text of sections 4031 and 4032 "strongly suggest the statute's physical-force element involves the kind of violent force" required by ACCA's force clause--force "capable of causing physical pain or injury to another person."  Serrano-Mercado, 784 F.3d at 845 (quoting Johnson I, 559 U.S. at 140); see United States v. Nieves-Borrero, 856 F.3d 5, 8-9 (1st Cir. 2017) (finding no plain error in counting aggravated battery under Article 122 as a crime of violence because it "applies only where the defendant has injured another in a manner that 'requires medical attention [or] specialized professional outpatient treatment.'" (quoting P.R. Laws Ann. tit. 33, § 4750)); see also United States v. Taylor, 848 F.3d 476, 494

_____

[13] Bauzó was convicted of aggravated assault in January 2005, before the statute was repealed and replaced in May 2005 as part of Puerto Rico's Penal Code modernization.  See Penal Code of the Commonwealth of Puerto Rico of 2004, No. 149, S.B. 2302, Art. 314.

(1st Cir.) (18 U.S.C. § 111(b) assault with a dangerous weapon and assault causing bodily injury are crimes of violence), cert. denied, No. 16-9137, 2017 WL 2119452 (June 12, 2017); United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015) (Massachusetts assault with a dangerous weapon is an ACCA predicate). Bauzó gives us no reason to believe otherwise. That means it was not a clear or obvious error to count the Article 95 conviction as a violent felony, either.

### b) The Shepard Error

That brings us to Bauzó's next alleged error--the sentencing court's failure to request the Shepard documents in order to determine whether he was convicted of a crime-of-violence modality of each of his predicates. As the government points out, this claim is a nonstarter. Even if we assume that it was a clear or obvious error for the sentencing court to fail to request the Shepard documents of its own accord, Bauzó still cannot prevail here because he has not shown that any error impacted his substantial rights. See Delgado-Sánchez 849 F.3d at 11 (taking a similar approach in similar circumstances); Serrano-Mercado, 784 F.3d at 848 n.6; United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006) (same). To make such a showing he must demonstrate "a reasonable probability that he would be better off from a sentencing standpoint had the district court not committed the claimed . . . error." Serrano-Mercado, 784 F.3d at 847

(quoting Turbides-Leonardo, 468 F.3d at 40). Where the error alleged is the failure to consult the Shepard documents and apply the modified categorical approach, he must show that if the sentencing court had actually examined the Shepard documents, it would find that his previous convictions were not for violent felonies. Delgado-Sánchez 849 F.3d at 11. But Bauzó does not show or argue that, if consulted, the Shepard documents would reveal that he was convicted of non-ACCA-qualifying versions of Article 5.15 and Article 95.[14] That means Bauzó cannot satisfy the third prong of plain-error review. Turbides-Leonardo, 468 F.3d at 40.

To sum up, it was not a clear or obvious error for the sentencing court to count three of Bauzó's prior convictions as career-offender qualifiers. And because he does not argue that the Shepard documents, if consulted, would show he was convicted of a non-qualifying version of these predicates, he has not shown that this error impacted his substantial rights.

---

[14] Not only did Bauzó fail to argue that the Shepard documents, if consulted, would show that he was convicted of a non-qualifying version of any of his past crimes, but he made three separate concessions that one modality of each of these crimes is, in fact, a violent felony. Our analysis here does not adopt or rely on these concessions. United States v. Thompson, 851 F.3d 129, 131 (1st Cir. 2017) (concessions as to legal conclusions in criminal cases not binding on appellate court). But under our plain-error standard of review, these concessions certainly do not advance his arguments.

### c) The __Johnson II__ Error

That leaves one final issue:  Bauzó's claim under __Johnson
II__.  Remember, Bauzó argues that his prior convictions do not
qualify under ACCA's force clause, so the sentencing court must
have counted them under the residual clause, but the residual
clause is now invalid, and so Bauzó is entitled to resentencing.[15]
In light of our finding above--that it was not a clear or obvious
error for the sentencing court to count at least three of Bauzó's
priors as predicates under the force clause--this argument is dead
on arrival.  In any case, on plain-error review the defendant bears
the burden of showing that this error occurred.  See __United States__
v. __Reed__, 830 F.3d 1, 7 (1st Cir. 2016).  As Bauzó himself frames
the argument, the court's career-criminal finding was "implicitly
premised" on the residual clause--in other words, there's no
express indication in the record that this is what the court did.
Nor does he argue that he admitted to his career-offender status
because he believed that his prior convictions counted as ACCA
predicates under the residual clause, or point to any case under
which his prior convictions were found to be predicates under the

---

[15] We note here that after this case was briefed and argued,
the Supreme Court determined that the Sentencing Guidelines'
identically worded residual clause does not suffer from the same
constitutional defect.  __Beckles__ v. __United States__, 137 S. Ct. 886,
895 (2017).  To the extent that Bauzó intended to challenge his
Guidelines range on this basis, __Beckles__ means the argument goes
nowhere.

residual clause.  Under these circumstances, Bauzó has not demonstrated that the court committed a <u>Johnson II</u> error, let alone a clear or obvious one, or that any error affected his substantial rights.

## Conclusion

The district court did not abuse its discretion in admitting the letter, the judicial-notice jury instruction was not plain or obvious error, and even if Bauzó's sentencing arguments are not waived, he has not shown any clear or obvious error that impacted his substantial rights.  We affirm Bauzó's conviction and his sentence.